**THE LAW FIRM, PLLC**
Derek A. Jordan, BPR No. 34299
W. Alan Rose, BPR No. 28903
Corey A. Spearman, BPR No. 40495
111 N.W. Atlantic Street
Tullahoma, TN 37388
Tel: (931) 222-4010
Email: derek@thefirm.law
       alanrose@thefirm.law
       coreyspearman@thefirm.law
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | |
|---|---|
| ABRAHAM JACKSON SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| COUNTY OF HAMILTON, TENNESSEE, ) | |
| HAMILTON COUNTY SHERIFF AUSTIN ) | |
| GARRETT, QCHC OF TENNESSEE, PLLC, ) | |
| and DOES 1-15, INCLUSIVE, ) | |
| ) | |
| Defendants. ) | |

### FEDERAL COMPLAINT WITH JURY DEMAND

COMES NOW, Plaintiff Abraham Jackson Sr., as next-of-kin of Abraham Jackson Jr., by and through his below signed attorneys of record, and as for his claims of action against the above-named Defendants, alleges and shows claims for relief as follows:

### I.     BACKGROUND

1.     This is a civil rights action brought under the Eighth Amendment to the Constitution of the United States and Title 42 of the United States Code, Section 1983 and 1988. Plaintiff brings this action to obtain compensatory damages, punitive damages, attorneys' fees, costs, and other equitable relief for the death of his son, Abraham Jackson Jr., who died while in

the custody of, and due to the deliberate indifference of, Hamilton County, the Hamilton County Sheriff's Office, and the deputies at the Silverdale Detention Center in Chattanooga, Tennessee (hereinafter "Silverdale.")

2.  Silverdale has long had the reputation of being a poorly run and dangerous jail. Inmates have been attacked and injured by other inmates armed with makeshift weapons, including stabbings with "shanks," or jail knives. Silverdale inmates also have died due to medical neglect and maltreatment by staff, prompting numerous lawsuits.

3.  This state of affairs is well-known, as was evidenced in mid-February of 2020, when federal Judge Sandy Mattice, after consultation with federal Judge Travis McDonough, directed all fifty-two federal inmates housed in Silverdale to be transferred out of Silverdale and put into neighboring facilities due to concern for the inmates' safety.

4.  Hamilton County took over operations of the formerly privately-run jail in December of 2020, but medical neglect by officials has continued.

5.  Abraham Jackson Jr. (hereinafter "Mr. Jackson"), died on October 16, 2022, at Erlanger Hospital. Mr. Jackson had been incarcerated at Silverdale since March of 2022, and was in good health when he first entered the facility. By September 16, 2022, when Mr. Jackson was admitted to Erlanger, he had lost nearly sixty pounds. Mr. Jackson's cell mate, Marvin Davis, stated that prior to his being taken to Erlanger, Mr. Jackson had not eaten nor drank anything for a week. Davis claims he saw Mr. Jackson black out three times, but Silverdale officials were unwilling to offer him any assistance. Davis was so afraid that he would have to watch Mr. Jackson die that he attempted to fake being sick to get the nurses' attention. Mr. Jackson died of multiple infections induced by severe malnutrition. He left behind his father, two daughters, five grandchildren, and six brothers, all of whom are devastated by his early and unjust passing.

## II.     JURISDICTION AND VENUE

6. This action is brough pursuant to 42 U.S.C. § 1983. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the Eighth Amendment to the Constitution of the United States.

7. This Court has supplemental jurisdiction to adjudicate Plaintiff's state law claims related to Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

8. The venue is proper in the Eastern District of Tennessee under 28 U.S.C § 1391(b)(2) where Silverdale is located and where its operations are based.

## III.     PARTIES

9. Plaintiff Abraham Jackson Sr., is Abraham Jackson Jr.'s father and next-of-kin. He is a resident of Chattanooga, Tennessee.

10. Defendant Hamilton County is a municipality that was created by the State of Tennessee in 1819. It owns Silverdale and is responsible for its operations.

11. Defendant Sheriff Austin Garrett (hereinafter "Sheriff Garrett") is the elected Sheriff of Hamilton County, sued in his individual and official capacity as sheriff, is an adult citizen of the State of Tennessee, and is domiciled in Hamilton County, Tennessee. Sheriff Garrett oversees Silverdale and is responsible for the hiring, training, supervision, discipline, and control of the deputies under his command. He is responsible for all actions of the staff at Silverdale and is the final policy maker for Silverdale. He is liable both directly and vicariously for the actions complained of herein.

12. Defendant QCHC of Tennessee, PLLC ("QCHC"), is a professional limited liability company with its principal office in Brentwood, Tennessee. QCHC contracts with Silverdale to provide medical care to the inmates at Silverdale.

13. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 15, and therefore sues said Defendants by such fictitious names. DOES 1 through 15 may be natural persons or artificial persons. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible legally in some manner for the acts, conduct, omissions, and events referred to herein.

14. Plaintiff is informed and believes and thereon alleges that each Defendant acted at all times relevant herein as the agent, servant, employee, supervisor, co-venturer, subsidiary, and/or corporate-parent of each of the remaining Defendants. Plaintiff further alleges that the acts or omissions of any agent or employee of Defendants were done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, subsidiary, and/or corporate-parent relationship. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same has been ascertained.

## IV. FACTUAL ALLEGATIONS

*History of Medical Neglect, Inhuman Conditions, and Inmate on Inmate Violence at Silverdale*

15. Silverdale is notorious for its failure to provide proper medical care to inmates, inhuman living conditions, and inmate-on-inmate violence.

16. A Nashville-based private prison corporation, CoreCivic, formerly the Corrections Corporation of America, operated Silverdale from 1984 until Hamilton County took over operations in December of 2020.

17. Despite Hamilton County's takeover of the jail, failure to provide proper medical care to inmates, inhuman living conditions, and inmate-on-inmate violence have continued.

18. On October 5, 2020, five Silverdale inmates were charged with attempted first-degree murder arising from an attack on a fellow prisoner that lasted for one to two hours and left the victim with 73 stab wounds.

19. On April 23, 2021, multiple Silverdale inmates were stabbed numerous times by fellow inmates wearing towels over their faces when officers placed them in a new cell despite the victims warning the officers that they would be attacked.

20. On September 5, 2021, a Silverdale inmate was stabbed nine times, including once in the face, when officers failed to lock his cell door and ignored the victim's attempts to alert them to the mistake.

21. In February of 2022, an open records request filed by NewsChannel9 revealed that Silverdale failed an inspection conducted by the Tennessee Corrections Institute in September of 2021. The inspection listed numerous deficiencies such as overcrowding in male housing units, multiple cameras in need of repair, and an HVAC unit in need of repair.

22. In March of 2022, a male Silverdale inmate was raped so savagely that he had to be released to a mental health facility with the likelihood of surgery necessary to repair the injuries incurred during the rape. The sentence he was serving was suspended.

23. In April of 2022, an inmate died of a drug overdose at Silverdale, where drugs are considered to be widely available due to neglect by officials.

24. On April 25, 2022, Hamilton County District Attorney General Neal Pinkston described Silverdale as "one of the most dangerous places to be in our county…" and claimed that it was "unacceptable." Former Sheriff Jim Hammond responded saying that Pinkston "…hit the nail right on the head…"

25. In May of 2022, Silverdale failed a health inspection. Inspectors found rat droppings in the food storage area, no sanitizer present in washing buckets, and walls, floors, and ceilings that were dirty and in poor condition.

26. On May 16, 2022, an inmate was found dead in Silverdale. She was serving a 45-day sentence for drunk driving and was not provided the proper medication for her seizures and thyroid issues.

27. On May 26, 2022, another inmate died at Erlanger Hospital, where he was taken three months into serving his sentence at Silverdale for burglary and assault. He suffered from HIV and asthma, and likewise was not provided with proper medication by Silverdale deputies.

28. On July 23, 2022, four inmates escaped Silverdale. It took guards almost four hours to notice they were missing.

29. On December 20, 2022, yet another inmate was found dead in Silverdale. Officials have not yet released his cause of death. He was in jail on charges of speeding, evading arrest, endangerment, and a traffic violation.

30. Despite these multiple documented instances of medical neglect, inhuman living conditions, and violence, Plaintiff believes that Defendants have taken no action to prevent further deprivations of civil rights at Silverdale.

*Mr. Jackson's Unnecessary and Preventable Death due to Medical Neglect by Silverdale Officials*

31. Mr. Jackson was first incarcerated at Silverdale in March of 2022.

32. Mr. Jackson's relatives report that he was in good health when first entered Silverdale.

33. Beginning on or about August of 2022, Mr. Jackson began experiencing unexplainable weight loss and began suffering from seizures. He was taken to the hospital twice during this period before being discharged back to Silverdale's care.

34. In the months before Mr. Jackson was admitted to Erlanger Hospital for the last time, he had lost nearly sixty pounds.

35. Mr. Jackson's cellmate, Marvin Davis, stated that Mr. Jackson had not eaten or drank anything for about a week prior to being admitted to Erlanger Hospital on September 16, 2022.

36. Davis states that despite his witnessing Mr. Jackson black out on three separate occasions, Silverdale officials were unwilling to provide him with any assistance because Mr. Jackson, being in a catatonic state, could not request the help himself.

37. Davis was so afraid that he would have to watch Mr. Jackson die that he even attempted faking an illness himself just to get the guards' attention.

38. Davis considered himself Mr. Jackson's caretaker because he claims Silverdale officials "[didn't] care" and were willing to just let Mr. Jackson die.

39. Mr. Jackson was admitted to Erlanger Hospital for the last time on September 16, 2022, suffering from acute metabolic encephalopathy, failure to thrive, and acute anemia, likely resulting from malnutrition.

40. The Silverdale officer who accompanied Mr. Jackson to the hospital claimed that he didn't know when Mr. Jackson was last in normal condition.

41. Mr. Jackson died on October 28, 2022, after Erlanger staff informed his family that he would never regain normal bodily function and that his only chance for survival would be permanent placement of a tracheal tube and 24-hour care in a nursing home facility. Even then,

Erlanger staff believed that Mr. Jackson would likely require frequent hospitalization for recurring infections and amputation of his hand. Realizing that this would not be an acceptable quality of life for Mr. Jackson, his family made the difficult decision to transition to end of life care.

42. During this conversation, an Erlanger nurse told the family that it was possible Mr. Jackson would have had a different outcome had he been admitted to the hospital sooner and that she understood how frustrating that must be.

## V. FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – VIOLATION OF EIGHTH AMENDMENT
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

43. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

44. The Civil Rights Act, as codified at 42 U.S.C. § 1983, provides as follows:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

45. Pursuant to the Eighth Amendment, Mr. Jackson, an inmate at Silverdale, had a constitutional right to be free from cruel and unusual punishment during his confinement, including a right to be provided with adequate medical care and humane living conditions.

46. Defendants acting individually and together, under the color of law, acted to violate Mr. Jackson's rights when they ignored Mr. Jackson as he slowly deteriorated in his cell and failed to provide the necessary medical treatment that if provided in a timely manner would have saved Mr. Jackson's life.

47. Defendants understood their actions would result in the deprivation of Mr. Jackson's constitutional rights as evidenced by the numerous incidents of inmates at Silverdale dying from medical neglect, the failed inspections at Silverdale, and the public outcry from both that preceded Mr. Jackson's treatment.

48. Defendants' intentional, unreasonable, reckless, and deliberately indifferent acts were the moving force behind the violation of Mr. Jackson's constitutional rights and his resulting death.

49. Mr. Jackson's rights to be provided adequate medical care and confined in humane living conditions are both well-established, and reasonable persons in Defendants' position would have known or should have known that their actions would result in a violation of Mr. Jackson's constitutional rights.

## VI. SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – *MONELL* LIABILITY
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

50. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Hamilton County—through the decisions of its policymaker Sheriff Garrett—was directly responsible for the deprivation of Mr. Jackson's constitutional rights as described herein and is thus subject to liability under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs of New York*, 436 U.S., 658, 691 (1978).

52. At all times material to this claim, Defendants Hamilton County and Sheriff Garrett failed to train, adequately supervise, and discipline officers regarding the provisioning of adequate medical care and maintenance of humane living conditions.

53. Defendants knew of the multiple failures in policy at Silverdale, as established by the instances cited herein, but nevertheless continued to operate the facility with minimal adjustments.

54. Defendants were aware of the need to supervise, train, investigate, and discipline their subordinates to mitigate unreasonable risks of harm to inmates in Defendants' custody.

55. Despite this knowledge, Defendants failed to adequately train, supervise, or discipline individuals who engaged in these behaviors. This failure to train, supervise, and discipline was a moving force behind the serious harm and violation of constitutional rights suffered by Mr. Jackson.

56. As final policymakers, these Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures that they knew would and did directly and proximately create conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights.

57. Further, these Defendants failed to establish and maintain policies to mitigate known serious risks of harm, and these Defendants should have known that such failures would deprive people in their custody, including Mr. Jackson, of constitutional rights.

58. Defendants were aware that the policies, procedures, practices, customs, and usages they established and those they failed to establish would result in violations of constitutional rights.

59. These policies and practices specifically included Defendants' practice of failing to adequately classify inmates or develop and implement an adequate classification plan, failing to ensure adequate investigation into critical incidents, failing to implement corrective action plans to address the known substantial risks of harm described herein , failing to ensure deputies

FEDERAL COMPLAINT WITH JURY DEMAND
Case 1:23-cv-00046-DCLC-SKL   Document 1   Filed 02/27/23   Page 10 of 15   PageID #: 10
10

were observing housing units, failing to investigate incidents of harm, failing to provide appropriate training, disciplinary procedures, and supervision of staff, failing to ensure adequate staffing so as to effectively create inhumane conditions of confinement and deficient provisioning of medical care that allowed known substantial risks of serious injury to go unmitigated, failing to follow or enforce basic jail guideline requirements, failing to establish or enforce policies regarding the proper provisioning of medical care to inmates, failing to engage in oversight sufficient to prevent constitutional rights violations, and failing to adequately respond to obvious violations of constitutional rights of people held at Silverdale.

60. These actions, and failures to act, were a moving force in the substantial risk of harm and unconstitutional conditions of confinement leading to Mr. Jackson's death.

61. At all times material to this claim, Defendants were acting under color of law and in the course and scope of their employment. Defendants acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Mr. Jackson by failing to mitigate known serious risk of harm. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problems, thereby effectively ratifying them.

62. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Mr. Jackson's death.

FEDERAL COMPLAINT WITH JURY DEMAND
Case 1:23-cv-00046-DCLC-SKL   Document 1   Filed 02/27/23   Page 11 of 15   PageID #: 11
11

## VII. THIRD CAUSE OF ACTION

### TENNESSEE COMMON LAW NEGLIGENCE
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

63. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Defendants owed a legal duty of care to Mr. Jackson to protect him from reasonably foreseeable harm.

65. Defendants knew or should have known that Mr. Jackson was suffering from multiple infections, required emergency medical care, and would suffer harm if that care was not provided in a timely manner, but they failed to use reasonable care to prevent said harm.

66. Defendants' breaches of their duty of care to Mr. Jackson directly and proximately caused Mr. Jackson's death.

## VIII. FOURTH CAUSE OF ACTION

### LOSS OF CONSORTIUM
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

67. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Tennessee allows for an award of damages for loss of filial consortium and other damages for the death of one's child under Tenn. Code Ann. § 20-5-113. *See Hancock v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 54 S.W.3d 234, 236 (Tenn. 2001).

69. Defendants' wrongful acts, faults, omissions, and tortious misconduct caused Plaintiff to suffer a loss of filial consortium and other damages arising from the death of his beloved son.

70. Accordingly, Plaintiff is entitled to an award of damages, including the pecuniary value of Mr. Jackson's life and the loss of his son's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## IX. FIFTH CAUSE OF ACTION

### TENN. CODE ANN. § 1-3-121
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

71. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Defendants knowingly and deliberately failed to ensure constitutionally adequate levels of inmate safety, living conditions, and medical care at Silverdale.

73. Tenn. Code Ann. § 1-3-121 enables Plaintiff to vindicate claims for declaratory and injunctive relief in cases involving illegal and unconstitutional government action. It specifically provides that: "Notwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action."

74. Defendants' chronic deliberate indifference to inmate safety, medical needs, and living conditions contravenes the provisions of the Eighth Amendment to the United States Constitution.

75. Defendants' actions additionally contravene Tenn. Const. art I, § 32, which provides: "That the erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for."

76. Absent, at minimum, regular independent monitoring and unannounced inspections designed to determine whether Defendants have remedied their chronic deliberate

indifference to inmate safety, medical needs, and living conditions, Defendants will continue to act both illegally and unconstitutionally with respect to their operation of Silverdale.

77. To remedy Defendants chronically illegal and unconstitutional actions at Silverdale, this Court should appoint an independent monitor to conduct regular unannounced inspections of Silverdale and report whether Defendants have remedied their chronic unlawful conduct.

78. In the absence of Defendants coming into compliance with their obligation to ensure constitutionally adequate levels of inmate safety, medical care, and living conditions, this Court should issue an injunction permanently enjoining Defendants from continuing to operate Silverdale going forward.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for judgment as follows:

A. For general damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

B. For special damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

C. For other economic and compensatory damages, in an amount to be determined by proof at trial;

D. For punitive and exemplary damages, including treble damages, as permitted;

E. For costs of suit incurred herein;

F. For reasonable attorneys' fees;

G. That this Court declare that Defendants acted illegally by failing to ensure constitutionally adequate levels of inmate safety, medical care, and living conditions at Silverdale.

H. That this Court appoint an independent monitor to conduct regular unannounced inspections at Silverdale and report whether Defendants have remedied their chronic unlawful conduct, and that this Court issue an injunction permanently enjoining Defendants from continuing to operate Silverdale if they fail to do so; and

G. For such other and further relief as this Court deems just and proper.

Dated this 27th day of February 2023.

/s/ Derek A. Jordan
Derek A. Jordan, BPR No. 34299
W. Alan Rose, BPR No. 28903
Corey A. Spearman, BPR No. 40495
THE LAW FIRM, PLLC
111 NW Atlantic Street
Tullahoma, Tennessee 37388
Telephone: (931) 222-4010
email:  derek@thefirm.law
           alanrose@thefirm.law
           coreyspearman@thefirm.law

*Attorneys for Plaintiff*